■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIX AMILL, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kramer, J.), rendered May 22, 1981, convicting him of burglary in the third degree, upon a plea of guilty, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress certain physical evidence. Judgment reversed, on the law, plea vacated, suppression motion granted and matter remitted to Criminal Term for further proceedings. At approximately 11:30 A.M. on October 24, 1979 two plain clothes policemen received a radio report of three suspicious male Hispanics with a white automobile. Upon arriving at the location one officer went to a white car while the other officer questioned the grocer who had placed the "911" call. The grocer informed the officer that three male Hispanics, two of whom he described in detail, had been walking up and down past his and other stores, had peered in the windows, were constantly looking over their shoulders and acted as if they were "stalking" this "strictly or mainly" Italian area. One of the officers then approached a black male who was seated on the passenger

side of the white car who in response to the officer's questions, stated that his two friends had gone to visit a friend in an apartment building around the corner and that he did not know which apartment building they had entered. After waiting a few moments, the officers observed two Hispanic males exiting an apartment building up the block. The officers approached the two, identified themselves and asked where the two had come from. Defendant responded that they were visiting a friend. At this time one officer entered the apartment building while the other officer remained outside. Upon entering the first floor of the building the officer observed that one of the apartments had been "ransacked". The officer exited the building within two or three minutes of his entry and promptly placed the defendant and his companion under arrest. A search of the two men pursuant to the arrest yielded an amount of cash and various items of jewelry later identified by the tenant of the apartment which had been "ransacked". The trial court held that the initial encounter between the officers and defendant did not amount to a "seizure" within the meaning of the Fourth Amendment, that the officers' minimal intrusion was justified by the surrounding circumstances and that the officers had probable cause to arrest the defendant. We disagree. While the circumstances justified the officers' initial inquiry, the defendant's arrest was unsupported by probable cause. As there was no testimony to indicate whether the officer who discovered the burglary could or did ascertain how long prior to his arrival the burglary occurred, the officers had only a reasonable suspicion that defendant and his companion had committed the crime. Although the trial court found that the officers "as trained and experienced police officers surely" were aware "that crime statistics show 71% of all residential burglaries are committed during daylight hours" (see New York State Division of Criminal Justice Services, Annual Report, 1979), there was no indication in the case at bar that the neighborhood in which this burglary occurred was a high crime area. (Cf. *People v Hunter*, 30 NY2d 774, 776.) Thus, the "defendant's actions, although not inconsistent with culpable [conduct] are also susceptible of many innocent interpretations. His behavior, at most equivocal and suspicious, was unsupplemented by any additional behavior or circumstances raising the 'level of inference from suspicion to probable cause'. (See *People v. Corrado*, 22 N Y 2d 308, 311, 313.)" (*People v Brown*, 32 NY2d 172, 174.) Damiani, J. P., Mangano, Gibbons and Boyers, JJ., concur.